IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LORENZO PAYTON,                    )
                                   )
            Plaintiff,             )
                                   )
     v.                            )    1:20cv801
                                   )
S. HOLCOMB, et al.,                )
                                   )
            Defendants.            )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion for Summary Judgment" (Docket Entry 33)[1] (the "Motion") filed by Kolya Baker, Stephen Holcomb, and Tracy Lowder (collectively, the "Defendants"). For the reasons that follow, the Court should grant the Motion.

**BACKGROUND**

Alleging violation of his eighth-amendment rights during his incarceration at Albemarle Correctional Institution (at times, "Albemarle CI") on October 12, 2019, Lorenzo Payton (the "Plaintiff") sued Defendants pursuant to 42 U.S.C. § 1983.[2] (See

---

[1] For legibility reasons, this Opinion uses standardized capitalization and spelling and omits the word "the" in front of "Plaintiff" in all quotations from the parties' materials.

[2] "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted).

Docket Entry 1 (the "Complaint") at 1-6.)[3]  According to Plaintiff's unverified Complaint (see id. at 10):

> On [October 12, 20]19, after a verbal confrontation, [Sergeant Holcomb] used excessive and unnecessary physical force on [Plaintiff]. [Sergeant Holcomb] told Plaintiff to put his hands behind his back and face the wall. After complying with [Sergeant Holcomb's] directive, [Sergeant Holcomb] put Plaintiff in a choke hold and proceeded to assault Plaintiff by punching him in the head and face, all while pulling him to the floor. [Sergeant Holcomb's] takedown maneuver caused multiple injuries to Plaintiff. While [Sergeant Holcomb] continued to punch and choke Plaintiff, [Sergeant Holcomb] directed additional staff to engage and assist where one, [Officer Baker,] began to twist Plaintiff's arm behind his back while [Officer Lowder] began to twist Plaintiff's leg/ankle in an awkward angle.
>
> At this point[,] they cuffed Plaintiff and escorted him to restrictive housing. Shortly thereafter, Plaintiff was interviewed by Captain Austin, who then began to take pictures of Plaintiff's injuries. Plaintiff was then seen by the nurse who gave Plaintiff non-aspirin and an ice pack. From this incident, Plaintiff has suffered many injuries[,] including [a] head injury, cuts on [his] left hand, [a] ruptured left biceps, further injury to [a] slipped disc in [his] lower back, [a] dislocated toe on [his] right foot, neck pain[,] and migraine headaches.
>
> Plaintiff was charged for assaulting staff but after video footage was discovered, all charges were dropped against Plaintiff.

(Id. at 5-6; see also id. at 3-4 (identifying relevant Defendants).)

After close of discovery (see Text Order dated Mar. 15, 2023 (establishing discovery deadline of November 20, 2023); see also

---

[3] Docket Entry page citations utilize the CM/ECF footer's pagination.

Text Order dated Jan. 12, 2024 (granting Defendants' request to extend their dispositive motions' deadline)), Defendants moved for summary judgment on "all claims against them" (Docket Entry 33 at 2), "contend[ing] that the record establishes as a matter of law that they did not violate Plaintiff's Eighth Amendment rights or any of his other constitutional or legal rights" (id. at 1). That same day, the Clerk sent Plaintiff a Roseboro Notice, warning that:

> [Defendants] filed a Motion for Summary Judgment on 01/19/2024, which may or may not be supported by an affidavit.
>
> You have the right to file a 20-page response in opposition to the defendant(s)' motion(s). If defendant(s) filed a motion for summary judgment or filed affidavits, your response may be accompanied by affidavits setting out your version of any relevant disputed material facts or you may submit other responsive material. Your failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the court to conclude that the defendant(s)' contentions are undisputed and/or that you no longer wish to pursue the matter. Therefore, unless you file a response in opposition to the defendant(s)' motion(s), it is likely your case will be dismissed or summary judgment granted in favor of the defendant(s). A response to a motion for summary judgment must be filed within 30 days from the date of service on you.
>
> Any response you file should be accompanied by a brief containing a concise statement of reasons for your opposition and a citation of authorities upon which you rely. You are reminded that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify. . . .

(Docket Entry 37 at 1.)

Despite this notice, Plaintiff did not file a substantive response to the Motion. (See Docket Entries dated Jan. 19, 2024, to present.) Instead, Plaintiff submitted a document indicating that "[he] request[s] to appeal the decision of the judgment ruling on [his] case where there was the decision to have it dismissed." (Docket Entry 39 at 1.)[4]

Thus, as relevant to the Motion, the record before the Court reflects the following:

Officer Lowder and Officer Baker both aver that they did not participate in the "use-of-force incident" at issue in this lawsuit, which "occurred on the morning of October 12, 2019[,] during breakfast in the Albemarle CI dining hall" (Docket Entry 35-6, ¶ 4; Docket Entry 35-7, ¶ 4). (See Docket Entry 35-6, ¶¶ 5-6; Docket Entry 35-7, ¶¶ 5-6.) More specifically, Officer Lowder swears that he "was not present for that use-of-force incident, and [he] ha[s] no first-hand knowledge of that use-of-force incident." (Docket Entry 35-6, ¶ 5.) He further avers that he "did not use any force on Plaintiff on October 12, 2019." (Id., ¶ 6.) For his part, Officer Baker swears that he "was not in the dining hall when the incident took place. [He] was in master control at time of the incident and only saw the end of the incident as [he] looked down

---

[4] Addressed "[t]o whom it may concern," this document continues in full: "I request to be assigned an appellate defender for this legal matter. I'm incarcerated at Sanford Correctional Center[;] therefore[, I] cannot hire one myself. I look forward to hearing back from you ASAP[.] Thank you, [Plaintiff.]" (Id.)

4

from master control into the dining hall." (Docket Entry 35-7, ¶ 5.) Officer Baker further avers that he "did not twist Plaintiff's arm on that day, and [he] ha[s] never twisted Plaintiff's arm. [He] did not use any force on Plaintiff on October 12, 2019." (Id., ¶ 6.)

In turn, Sergeant Holcomb avers:

He works for "the North Carolina Department of Adult Correction ([the] 'NCDAC') (formerly a part of the North Carolina Department of Public Safety ([the] 'NCDPS'))." (Docket Entry 35-1, ¶ 2.) "On October 12, 2019, [he] was a sergeant at Albemarle CI." (Id., ¶ 4.) "On October 12, 2019, [Sergeant Holcomb] was supervising morning breakfast in the dining hall at Albemarle CI. Plaintiff was required to be working in the dining hall at that time. However, [Sergeant Holcomb] observed Plaintiff standing around and not working." (Id., ¶ 5.) "At that time, [Sergeant Holcomb] gave Plaintiff a direct order to help offenders in wheelchairs carry trays to their tables. Plaintiff refused, stating that it was not his job." (Id.) "So, [Sergeant Holcomb] then ordered Plaintiff to assist with wiping the tables. Plaintiff refused that order, too." (Id.)

"After Plaintiff refused both direct orders, [Sergeant Holcomb] informed [Plaintiff] that he would be receiving a disciplinary action [sic] and ordered him to return to his unit. [Sergeant Holcomb] also ordered Plaintiff to hand [Sergeant

5

Holcomb] his identification card." (Id., ¶ 6.) "Plaintiff refused both orders and began to walk away from [Sergeant Holcomb]. [Sergeant Holcomb] then followed Plaintiff, giving him orders to submit to hand restraints." (Id., ¶ 7.) "Plaintiff stopped as [Sergeant Holcomb] approached to place him in restraints. [Plaintiff] then started to turn toward [Sergeant Holcomb] and attempted to pull away." (Id., ¶ 8.) "At that point, [Sergeant Holcomb] began to move Plaintiff to the nearby wall in an effort to gain control of him. Plaintiff began to resist as [they] approached the wall, spun around to face [Sergeant Holcomb], and started pushing [Sergeant Holcomb] in an effort to break away from [Sergeant Holcomb's] hold." (Id., ¶ 9.)

"Then, Plaintiff and [Sergeant Holcomb] fell to the floor with Plaintiff falling on top of [Sergeant Holcomb], continuing to resist." (Id., ¶ 10.) "[Sergeant Holcomb] then used defensive techniques; specifically, [Sergeant Holcomb] attempted to strike Plaintiff on the brachial plexus with a hammer fist." (Id., ¶ 11.) "Other correctional staff arrived to assist in restraining Plaintiff. Once Plaintiff was restrained, other correctional staff assisted him to his feet and escorted him to restrictive housing." (Id., ¶ 12.) "[Sergeant Holcomb], too, was assisted to [his] feet by other correctional staff." (Id., ¶ 13.) "[Sergeant Holcomb] sustained an injury to [his] left ankle, and [he] was sent to the local urgent care center for treatment." (Id., ¶ 14.)

6

"When [Sergeant Holcomb] attempted to place Plaintiff against the wall and place him in restraints, and when [Sergeant Holcomb] attempted to strike Plaintiff in the brachial plexus, [Sergeant Holcomb] had no purpose other than to gain control and maintain order." (Id., ¶ 15.) "[Sergeant Holcomb's] actions were not to be malicious or sadistic or to cause harm." (Id.) "Neither [Officer] Lowder nor [Officer] Baker, defendants in this matter, were present at the incident." (Id., ¶ 16.)

"Attached [to Sergeant Holcomb's declaration] as Exhibit 1.A. is a true, authentic, and correct copy of the Incident Report regarding the incident." (Id., ¶ 17.) "Said Incident Report was made near the time of the incident from information transmitted by people, including [Sergeant Holcomb], with knowledge of the incident." (Id.) "This Incident Report is kept in the course of regularly conducted activity of NCDPS/NCDAC. Making this Incident Report was a regular practice of NCDPS/NCDAC's regularly conducted activity." (Id.) "The Incident Report reflects that neither [Officer] Lowder nor [Officer] Baker were present at the incident." (Id.) Sergeant Holcomb's declaration also purports to attach, "as Exhibit 1.B.[, ]a true, authentic, and correct copy of the video recorded on the day of the incident in the dining hall which shows the use of force incident." (Id., ¶ 18.)

As forecast in Sergeant Holcomb's declaration, the submitted Incident Report does not reflect the presence of either Officer

7

Lowder or Officer Baker during the incident.  (See Docket Entry 35-2 at 1-5.)  Instead, it notes the participation of multiple other officers, including both those who "assist[ed] with taking control of [Plaintiff] and applying restraints" and those who "assisted by moving other offenders away from the area and making sure no other offenders became involved."  (Id. at 1.)  In addition, it indicates that "[t]here was [sic] no injuries noted or claimed by [Plaintiff] in this incident."  (Id. at 2; see also id. at 4 ("October 12, 2019 at 0700 hours [Plaintiff] was evaluated by [a nurse] after he was involved in a Use of Force Incident with staff at Albemarle Correctional Institution.  Screening completed per protocol, no injuries claimed or observed.").)

Notably, though, the record does not contain the referenced video of the incident.  Contemporaneously with filing the Motion, Defendants sought "leave to manually file a digital video exhibit on a flash drive in support of [their] Motion."  (Docket Entry 36 at 1.)  In response, the Court (per the undersigned) "direct[ed] counsel for Defendants (A) to promptly make reasonable efforts to arrange with Plaintiff's custodians an opportunity for Plaintiff to view (and to take notes regarding) the video evidence referenced in [the] Motion, and (B) to file a notice on or before [February 9, ]2024 setting out the status of those efforts."  (Text Order dated Jan. 23, 2024.)  Per the resulting notice, Defendants' counsel coordinated with "Warden Ramon Gutierrez, the Warden of Sanford

8

Correctional Center where Plaintiff is currently housed," to whom he sent "a flash drive containing the video evidence referenced in Defendants' Motion to Manually File Video Recording." (Docket Entry 38 at 1.) The notice further indicates that, on February 2, 2024, Warden Gutierrez "confirmed that Plaintiff reviewed the video evidence, but that Plaintiff refused to then sign the Receipt & Acknowledgment Form claiming that the individual on the video was not him." (Id.) Accordingly, the Court "grant[ed the] Motion to Manually File Video Exhibit," directing Defendants to "manually file with the Clerk's Office a flash drive containing [the] digital video exhibit referenced as Exhibit 1.B. in [the] Appendix" to Defendants' Motion. (Text Order dated Feb. 6, 2024.) Defendants promptly mailed to the Court a flash drive purporting to "contain[] footage of the incident that occurred on October 12, 2019." (Enclosure Letter dated Feb. 6, 2024.) However, the provided flash drive did not contain any video footage. Rather, it contained an NCDPS Incident Report regarding an incident on May 18, 2014, when Plaintiff experienced an illness at Pamlico Correctional Institution, for which he received care at Craven Correctional Institution. That incident and associated Incident Report lack any apparent connection to this lawsuit.

9

**DISCUSSION**

**I. Relevant Standards**

**A. Summary Judgment Standards**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[5]  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing the absence of such dispute.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  In other words, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him."  Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc)

---

[5]  "[I]n considering a motion for summary judgment, the district court *must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."  Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis in original) (internal quotation marks omitted).

(brackets and internal quotation marks omitted).  If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Further, factual allegations in a complaint or other court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

11

### B. Eighth Amendment Standards

"The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." Thompson v. Virginia, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation marks omitted). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" Id. (ellipsis in original) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). Accordingly, in evaluating an eighth-amendment excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 98 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In conducting this analysis, the Court considers "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation marks omitted).

Notably, a prisoner need not suffer a significant injury to prevail on an excessive force claim. Thompson, 878 F.3d at 98; see also Hudson, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." (citation omitted) (citing Whitley,

12

475 U.S. at 327)). "The excessive force analysis thus focuses on the maliciousness of the force used, not the severity of the injury that results from that force." Thompson, 878 F.3d at 101; see also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). As such, an injury qualifies as "sufficiently serious for purposes of the objective component of an [e]ighth[-a]mendment excessive force claim as long as it rises above the level of de minimus harm." Iko, 535 F.3d at 238.[6]

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" Id. at 239 (quoting Whitley, 475 U.S. at 322); see also id. ("Put differently, the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Hudson, 503 U.S. at 7)). The United States Supreme Court has identified four factors to assist courts in determining whether an officer acted with "'wantonness'":

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force

---

[6] Notably, although "an excessive force plaintiff need not show significant injury, the extent of injury may supply insight as to the force applied." Cowart v. Erwin, 837 F.3d 444, 453 (5th Cir. 2016).

13

> that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321.

## II. Analysis

As an initial matter, Officers Lowder and Baker contend that "Plaintiff's claims against [them] obviously fail[] and . . . should be dismissed with prejudice" (Docket Entry 34 at 11) because "they were simply not present" and did not "use[] force on Plaintiff on October 12, 2019" (id. at 10). This position possesses merit.

In his unverified Complaint, Plaintiff asserts that, during the relevant incident, Officer Baker "began to twist Plaintiff's arm behind his back while [Officer Lowder] began to twist Plaintiff's leg/ankle in an awkward angle." (Docket Entry 1 at 5; see also id. at 3-4.) Notably, however, because Plaintiff did not swear to the truthfulness of or otherwise submit these allegations under penalty of perjury (see id. at 1-10), they do not constitute evidence for summary judgment purposes, Reeves, 2011 WL 4499099, at *5 n.14. Instead, the only evidence in the record establishes that

14

neither Officer Baker nor Officer Lowder participated in the challenged use of force against Plaintiff. (See Docket Entry 35-6, ¶¶ 4-6; Docket Entry 35-7, ¶¶ 4-6; see also Docket Entry 35-2 at 1-5 (identifying participants in incident).)

"To establish personal liability under § 1983, however, the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (brackets, citation, and internal quotation marks omitted). "Importantly, mere knowledge of such a deprivation does not suffice." Id.[7]

Because the evidence, even construed in Plaintiff's favor, remains "insufficient to show that [either Officer Baker or Officer Lowder] was personally involved in any" assault of Plaintiff, "no reasonable trier of fact could find that [Officer Baker's or Officer Lowder's] 'own individual actions' violated the

---

7 Thus, the mere fact that Officer Baker "saw the end of the incident as [he] looked down from master control into the dining hall" (Docket Entry 35-7, ¶ 5) does not salvage Plaintiff's excessive force claim. Moreover, the record does not reflect that Officer Baker, who "was not in the dining hall when the incident took place" (id.), possessed "a reasonable opportunity to prevent the [alleged] harm," Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002), to Plaintiff. As such, Officer Baker likewise bears no responsibility under a bystander liability theory. See id. at 203 (explaining that, "if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly").

15

Constitution." Id. at 172. "Accordingly, [Officer Baker and Officer Lowder a]re entitled to summary judgment on [Plaintiff's excessive force claim] because they lacked sufficient personal involvement in the alleged constitutional deprivation[]." Id.

For his part, Sergeant Holcomb asserts that "application of the *Whitley* factors demonstrates that the minimal use of force . . . was necessary and not excessive," therefore mandating dismissal of "the claims against [him]." (Docket Entry 34 at 16.) This position should also prevail.

As noted, the record reflects that, during breakfast in the Albemarle CI dining hall, Plaintiff ignored two direct work-related orders from Sergeant Holcomb, including an order to assist other offenders present in the dining hall. (See Docket Entry 35-1, ¶ 5; see also Docket Entry 35-2 at 1-2 (noting presence of other inmates).) The record further reflects that, in response to this refusal, Sergeant Holcomb ordered Plaintiff to provide his identification card and return to his unit (Docket Entry 35-1, ¶ 6), additional direct orders that Plaintiff refused before walking away, prompting Sergeant Holcomb to "follow[] Plaintiff, giving him orders to submit to hand restraints" (id., ¶ 7). According to the record, Plaintiff then physically resisted Sergeant Holcomb's efforts to place him against a wall and handcuff him, causing them both to fall to the floor with Plaintiff on top of Sergeant Holcomb, at which point Sergeant Holcomb "used

16

defensive techniques; specifically, [Sergeant Holcomb] attempted to strike Plaintiff on the brachial plexus with a hammer fist" (id., ¶ 11).[8] (Id., ¶¶ 8-10.) Finally, per Sergeant Holcomb, "[w]hen [he] attempted to place Plaintiff against the wall and place him in restraints, and when [he] attempted to strike Plaintiff in the brachial plexus, [he] had no purpose other than to gain control and maintain order," and "[his] actions were not to be malicious or sadistic or to cause harm." (Id., ¶ 15.)

As for the first three Whitley factors, "the need for the application of force," "the relationship between the need and the amount of force that was used," and "the extent of any reasonably perceived threat that the application of force was intended to quell," Iko, 535 F.3d at 239 (internal quotation marks omitted), the record thus establishes that, after repeatedly ignoring orders from Sergeant Holcomb, in the presence of other inmates, Plaintiff physically resisted Sergeant Holcomb's efforts to handcuff him. The record further reflects that, when Plaintiff fell on top of him, Sergeant Holcomb merely employed a defensive technique,

---

8 Although Defendants provide no further details regarding this maneuver, it is "a[n NC]DPS approved defensive technique," Jackson v. Daniels, No. 5:17-ct-3222, 2020 WL 865415, at *2 (E.D.N.C. Feb. 20, 2020), designed "to prevent further assault on staff," Wilson v. Simmons, No. 3:18-cv-198, 2020 WL 372996, at *7 (W.D.N.C. Jan. 22, 2020). See also Jackson, 2020 WL 865415, at *2 n.2 (explaining that defendant "states that this," namely "us[ing] the heel of his hand to strike the left side of [an inmate's] brachial plexus," id. at *2, "is an approved technique, as part of 'Control, Restraint and Defensive Techniques training,' designed to temporarily incapacitate a target").

17

"attempt[ing] to strike Plaintiff on the brachial plexus with a hammer fist" (Docket Entry 35-1, ¶ 11).

"Violent and disruptive situations within a jail or correctional setting . . . present obvious threats to jail security." Segura v. Cherno, No. 6:21-cv-740, 2022 WL 3587860, at *6 (D. Or. May 25, 2022), report and recommendation adopted, No. 6:21-cv-740, 2022 WL 3586721 (D. Or. Aug. 22, 2022). Moreover, "Plaintiff's undisputed refusal to comply with [Sergeant Holcomb's orders] justified some need for force to restore order." Geddings v. Roberts, No. 1:15cv264, 2018 WL 1626116, at *10 (M.D.N.C. Mar. 30, 2018) (explaining that "[c]ase law . . . support[s] that '[a] prisoner's failure to comply with an officer's order permits the officer to use some measure of force to gain the prisoner's compliance or to respond to a threat that arises because of the prisoner's failure to comply'" (final set of brackets in original) (collecting cases)). Accordingly, the first three Whitley factors weigh in Sergeant Holcomb's favor. See id. at *10-11.

The final factor, "any efforts made to temper the severity of a forceful response," Whitley, 475 U.S. at 321, likewise favors Sergeant Holcomb. Here, the record reflects that Sergeant Holcomb initially attempted to walk Plaintiff to a wall for handcuffing and only attempted a defensive maneuver after Plaintiff broke out of his hold and fell on top of him, where Plaintiff continued to resist Sergeant Holcomb's efforts to restrain Plaintiff. Under the

18

circumstances, "no reasonable jury could find that [Sergeant Holcomb's] use of force was applied maliciously and sadistically for the very purpose of causing harm." Geddings, 2018 WL 1626116, at *10.[9] The Court should therefore grant summary judgment to Sergeant Holcomb on Plaintiff's excessive force claim.

## CONCLUSION

The record establishes that Defendants did not use excessive force against Plaintiff.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 33) be granted.

This 15th day of May, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

---

9 Accordingly, the Court need not analyze whether Plaintiff satisfies the objective component of an eighth-amendment excessive force claim.